UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES E. BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 1:10-cv-01035-SEB-MJD |
| vs. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ENTRY**

James E. Brown ("Brown") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*. For the reasons explained herein, the Commissioner's decision is AFFIRMED.

**Background**

Brown filed his application for DIB on May 15, 2006, alleging a disability onset date of April 16, 2006. His application was denied initially and on reconsideration. At Brown's request, an administrative hearing was held on April 27, 2009, before Administrative Law Judge ("ALJ") John H. Metz. At this hearing, Brown was represented by an attorney and introduced evidence and testified. Dr. Laura Rosch, D.O.,

testified as an medical expert and Ray O. Burger testified as a vocational expert. On June 24, 2009, the ALJ issued a decision finding that Brown was not disabled at step five of the five-step sequential evaluation. Brown applied for review to the Appeals Council, and after considering additional information, the Appeals Council granted Brown's request for review on March 26, 2010. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The Appeals Council, upon review of the ALJ's decision, made the following relevant findings: (1) Brown met the special earnings requirements of the Act on April 16, 2006, the date Brown stated he became unable to work and met them through December 31, 2008; (2) Brown had not engaged in substantial gainful activity since August 16, 2006; (3) Brown had the following severe impairment: spondylosis at C5-C6 and C6-C7 with status post surgery for removal of two discs and spinal fusion; and a pain disorder, but did not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Brown's impairment resulted in the following findings with regard to his ability to perform work-related activities: no limitations with sitting, standing, or walking; can frequently lift 10 pounds and occasionally lift slightly less than 10 pounds; no scaffolding and no high hazards because of upper extremity weakness; Brown can

perform gross and fine manipulative functions on a frequent basis with both upper extremities; Brown should avoid concentrated exposure to hazards; and no overhead reaching/work; (5) Brown's "subjective complaints are not fully credible"; (6) Brown has an 11th grade education and is able to communicate in English; (7) Brown is a younger individual age 18-44; (8) Transferability of job skills is not material to the determination of disability due to Brown's age; (9) Considering Brown's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Brown can perform, such as food preparation worker, assembler, and inspector; (10) Brown is not disabled as defined in the Act at any time through the date of the ALJ's decision, June 24, 2009. The Appeals Council agreed with and adopted all of the ALJ's findings and conclusions with the exception of residual functional capacity, noting that the residual functional capacity cited in the ALJ's decision was not consistent with the residual functional capacity given by the medical expert at the hearing and considered by the vocational expert. The Appeals Council, therefore, "adopt[ed] the residual functional capacity articulated by the medical expert at the hearing and replace[d] Finding #5 in the hearing decision with that residual functional capacity." R. at 8.

## Discussion

**I. Applicable Law**

To be eligible for DIB, a claimant must prove that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in the Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920 [the "steps"]. A finding of disability requires an affirmative answer at either step three or step five."

*Id*. "An affirmative answer leads either to the next step or, in steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985).

After step three, the ALJ must assess the claimant's residual functional capacity.

20 C.F.R. § 404.1520. This determination has three components: physical abilities, mental abilities, and other impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). In order to place an individual at a particular residual functional capacity level, the individual must be able to perform the full range of work in that category on a daily basis. *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987). The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner.

The task the Court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and is otherwise free of legal error. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir.1993); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (stating that in a substantial evidence determination, the Court will not reweigh evidence). "We review the ALJ's factual determinations deferentially and affirm if substantial evidence supported the decision." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); 42 U.S.C. § 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Skinner v. Astrue*, 478 F.3d 836, 841(7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

**II. Analysis**

Brown raises four general issues for review. First, Brown alleges the ALJ and Appeals Council failed to properly evaluate the opinions of Dr. Wulff, which he believes should have been afforded greater weight because Wulff was a "treating physician."

5

Second, Brown alleges the transcript of the medical expert's testimony contains material defects requiring remand. Third, Brown alleges the Appeals Council failed to consider his pain disorder as a mental impairment and thus employed the wrong evaluation procedure. Finally, Brown alleges substantial evidence does not support the ALJ's credibility assessment. We address each of these arguments in turn.

### A. Weight Assigned to Dr. Wulff's Opinion.

Brown's first argument is that the ALJ failed to properly evaluate the opinions of Dr. Wulff regarding Brown's neck and head motion. Brown contends that as a treating physician, Dr. Wulff's opinion is entitled to controlling weight. Brown further alleges that the ALJ failed to provide an express and reasonable evaluation of Dr. Wulff's opinion, as a treating physician, as required.

The Commissioner rejoins that Dr. Wulff's opinions were discussed in the ALJ's credibility assessment, finding that the ALJ reasonably determined that Dr. Wulff's opinions were not supported by objective medical evidence. The Commissioner further contests categorizing Dr. Wulff as a treating physician because there are no treatment notes or evidence of a clinical examination by him of Brown in the record. Finally, the Commissioner argues Dr. Hughes examined Brown at approximately the same time as Dr. Wulff, but reached starkly different results than the severe limitations set forth by Dr. Wulff, making Dr. Wulff's opinion less credible.

A treating physician's opinion is generally entitled to controlling weight if the opinion is supported by medical findings and is consistent with other substantial evidence

in the record. *Copeland v. Astrue*, ___ F. Supp. 2d. ___, No. 3:09-CV-341, 2011 WL 831133, at *6 (N.D. Ind. March 1, 2011) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)); 20 C.F.R. § 404.1527(d)(2). However, "an ALJ may reject a treating physician's opinion if it is internally inconsistent, or inconsistent with other medical evidence in the record, such as opinions from consulting physicians." *Wilson v. Barnhart*, 130 Fed. Appx. 42, 46 (7th Cir. 2005) (citations omitted). To reject medical evidence, an ALJ "must minimally articulate reasons to support his analysis." *Id.* (holding an ALJ adequately articulated his reasons for disregarding two reports by a claimant's treating physician). So long as the ALJ minimally articulates his reasons for giving less weight to a treating physician's opinion, his decision is afforded great deference, a standard the Seventh Circuit characterizes as "lax." *Copeland*, 2011 WL 831133 at *6 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). The Seventh Circuit has imposed these standards to ensure an accurate decision and guard against the possibility that "'a claimant's treating physician may be biased in favor of the claimant; bias that a consulting physician may not share . . . .'" *Butera v. Apfel*, 173 F.3d 1049, 1056 (7th Cir. 1999) (quoting *Micus v. Bowen*, 979 F.2d 602, 607 (7th Cir. 1992)).

The record considered in its entirety suffices to establish that Dr. Wulff was Brown's treating physician, despite the Commissioner's generally correct assertion that the record contains less detail than expected in terms of treatment notes and documentation by a treating physician with regard to Brown. Dr. Wulff is referenced multiple times throughout the record. Various other doctors sent their test results and

treatment notes to Dr. Wulff, some of whom thanked Dr. Wulff for referring Brown to them and for allowing them to participate in Brown's care. The record also reflects multiple visits by Brown to Dr. Wulff and that Dr. Wulff over time prescribed several medications. Dr. Hughes, the doctor whose opinion the Commissioner contends refutes the conclusions of Dr. Wulff, saw Brown pursuant to a referral by Dr. Wulff and noted that he "continue[d] to recommend that the patient certainly needs to follow with Dr. Wolfe's (sic) recommendations . . . ." R. at 262. More telling in terms of our review, however, is the ALJ's identification of Dr. Wulff as one of Brown's treating physicians. R. at 26 ("the undersigned rejects the conclusions from the claims treating physician, Dr. John Dee Wulff . . ."). Despite the lack of specific treatment notes in the record, we thus reasonably conclude that Dr. Wulff was a treating physician, along with others, all of whom had administered care to Brown.

When a treating physician's opinion is not given controlling weight, regulations require an ALJ to consider certain specific factors in determining the appropriate weight to attribute to the opinion. These factors include: (1) the length of the treatment relationship and frequency of visits; (2) the nature and extent of the relationship, including the treatment given and extent of any examinations; (3) the supportability of the opinion in light of medical testing and the explanation given by the physician; (4) consistency with the rest of the record; (5) the physician's specialization; and (6) any other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). Regardless of the weight the ALJ assigns to the treating physician's opinion, he must

8

buttress that determination with "good reasons" for his decision. *Id.*

Brown argues in the instant case that the ALJ did not properly evaluate Dr. Wulff's opinion nor provide good reasons to justify the weight he accorded it. Our review confirms that the ALJ did sufficiently articulate his reasons for the weight he assigned Dr. Wulff's opinions. The ALJ noted two primary reasons for rejecting Dr. Wulff's conclusions: First, the radiological evidence and treatment reports from other physicians demonstrate that Dr. Wulff's opinions were inconsistent with other portions of the record. The ALJ undertook special efforts to understand Dr. Wulff's assessment in light of the remainder of the record by specifically requesting comment by the medical expert on Dr. Wulff's opinions; significantly, the medical expert responded that he "didn't understand the rationale for [Dr. Wulff's opinion]" and could find "nothing in the record to support that." R. at 316-17. Second, per the ALJ, "Dr. Wulff did not state any objective medical findings that support these and other unsupported conclusions." R. at 26. The lack of objective support for a conclusion is a valid reason for discounting a treating physician's opinion. *See, e.g. Copeland*, 2011 WL 731133, at *7; *Griffo v. Astrue*, ___ F. Supp. 2d ___, No. 10-C-2397, 2011 WL 589682, at *8 (N.D. Ill. Feb. 10, 2011). Thus, in light of the deferential standard granted ALJs' decisions generally, we hold that the ALJ in Brown's case satisfied his burden to provide good reasons for rejecting Dr. Wulff's opinions.

### B. Defective Transcript

Brown's second argument in seeking to set aside the Commissioner's decision is

that the transcript memorializing medical expert Dr. Rosch's testimony is defective, thereby depriving Brown of his statutory right to "a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g). According to Brown, inaudible portions of the recorded proceedings materially diminish his ability to understand the relationship between Dr. Rosch's testimony and the Appeals Council's decision. Brown contends that the Commissioner "must provide a complete and accurate transcript of the medical expert's testimony." Claimant's Br. at 11.

The Commissioner argues that despite the occasional inaudible portions the transcript is sufficient given that it provides overall the gist of Dr. Rosch's testimony. In particular, the Commissioner claims that the critical issues, such as Plaintiff's RFC and the absence of objective medical support for Dr. Wulff's opinions, are adequately captured so as to permit a reliable decision based on Dr. Rosch's testimony.

A transcript of witness testimony is necessary in order for the court to provide adequate judicial review. The transcript's sufficiency in fulfilling this purpose depends on the severity and extensiveness of the gaps created by inaudible portions of testimony. Some inaudible gaps may be so substantial, either due to their frequency or duration in time, that it is difficult to comprehend what the medical expert was saying and/or to discern reliably the basis for his opinions. *See, e.g.*, *Dandeneau v. Heckler*, 607 F. Supp. 583, 584 (D. Me. 1985) (holding that a transcript containing 139 inaudibles in 22 pages rendered the medical expert's testimony "virtually . . . incomprehensible" and thus

10

required a new hearing); *Ainsworth v. Astrue*, No. 09-cv-286-SM, 2010 WL 2521432, at *4 (D.N.H. June 17, 2010) (finding some inaudible gaps inconsequential but others significant enough to prevent understanding of the medical expert's opinions and therefore failed to satisfy the statutory obligation to provide a copy of the transcript of the record including the evidence upon which the findings and decision complained of are based). Other inaudible portions of testimony are inconsequential because "when that evidence is viewed in the full context of the record it is clear what the import of the questions and response was . . . ." *Yuhanick v. Commissioner of Social Security*, No. 5:09CV0907, 2010 WL 3092907, at *2-3 (N.D. Ohio July 21, 2010).

Here, Brown contends the inaudible portions amount to material defects, citing specific examples to support his claim.[1] We do not view these examples, however, as persuasive. When considered in the context of the record in its entirety, the gaps are insignificant in duration and do not detract from or otherwise impede an understanding of the questions and answers. Therefore, we hold that the transcript is sufficient for purposes of judicial review, despite the occasional inaudible segments.

### C. Pain Disorder

Brown's third argument is that the Appeals Council erroneously evaluated Brown's pain disorder. The Appeals Council adopted the ALJ's findings that Brown had

---

[1] Examples include Brown's allegation that he does not know the word Dr. Rosch used to describe "medical impairments," Brown's "depression" or Brown's "physical ailments." Claimant's Br. at 10; R. at 311.

the following severe impairments: spondylosis at C5-C6 and C6-C7 with status post surgery for removal of two discs and spinal fusions; and a pain disorder. R. at 9. Brown contends that the Appeals Coucil failed to recognize that a pain disorder is a mental impairment, and therefore neglected to follow proper procedures for the evaluation of the severity of mental impairments. *See* 20 C.F.R. § 404.1520a(a) (2010) ("[W]hen we evaluate the severity of mental impairments for adults . . . we must follow a special technique at each level in the administrative review process.") Thus, Brown argues that the case must be remanded in order to make a proper evaluation of his pain disorder as a mental health impairment, pursuant to 20 C.F.R. § 404.1520a. In response, the Commissioner contends that there is no evidence to support a finding that Brown had a significantly limiting mental impairment, that the ALJ did not associate the pain disorder with a mental impairment, and therefore, did not err by failing to conduct a severity of mental impairment assessment.

Brown's argument essentially asks the Court to declare that a pain disorder is *per se* a mental impairment, thereby invoking the "special technique" analysis promulgated in § 404.1520a. However, we find Brown's position (which he has failed to buttress with any relevant support) entirely untenable. To hold otherwise would require a finding anytime a patient suffers from pain that he also suffers from a mental impairment. This clearly distorts any objective interpretation of pain beyond reasonable limits. Thousands of cases presented to the Commissioner likely involve some degree of pain experienced by the patient, but where no mental disorder or impairment exists. Experience clearly

teaches that one can suffer pain without also suffering from a mental impairment. Thus, a diagnosis of a pain disorder is not, by itself, tantamount to a mental impairment.

Furthermore, the record before us clearly demonstrates that the conditions suffered by Brown for which he sought disability benefits were of a physical and not mental nature. Brown has alleged physical problems, such as numbness and pain in his upper extremities, but failed to mention any mental impairments. The ALJ noted the absence of any mention of psychiatric problems in the record and, when he asked Brown if he had been treated for any psychiatric problems, Brown replied that he had not. R. at 294. Brown attributed problems of dizziness and confusion to side effects from his pain medication rather than from any type of mental impairment. R. at 296-97. Beyond the single question by the ALJ to Brown referenced above, the ALJ made no further mention of mental impairments, except to instruct the vocational expert only to "take into consideration the physical restrictions" because [the ALJ] "impose[d] no mental restrictions since the documentation specifically show[ed] that [Brown's] pain disorder [was] associated with [his] physical problems . . . ." R. at 319. Brown failed to raise this issue below, despite ample opportunity, and did not object to the ALJ's dismissal of any claim of mental impairment in the disability hearing. Therefore, based on the record before us, it is clear that Brown's focus on pain arose as it related to his alleged physical limitations, rather than to any mental impairment.

The ALJ "need not . . . discuss every piece of evidence in the record[2] and is prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)). Here, the ALJ did not ignore a line of evidence, for the record clearly shows that the ALJ considered Brown's statements regarding his pain, noting that he would determine their credibility. Thus, the ALJ properly addressed Brown's allegations of pain and his evaluation of Brown's pain disorder was supported by substantial evidence.

**D. Credibility**

Brown's fourth and final claim is that the Appeals Council's credibility determination was not supported by substantial evidence. Specifically, Brown contends the Appeals Council erred by not specifically addressing certain items of evidence in its decision. Brown also argues that the Appeals Council's assessment of Brown's daily activities does not comport with a finding that Brown could do light work and that an improper reliance was made on the objective medical evidence, rather than Brown's subjective claims.

The Appeals Council adopted the ALJ's credibility findings; thus, we shall address those findings as well. The Commissioner rejoins that the ALJ did, indeed, properly

---

[2] Brown claims error based on the ALJ's failure to specifically mention regional pain syndrome or Dr. Wulff's opinion about Brown's concentration deficits. However, as noted above, not every piece of evidence must be specifically addressed and a "commonsensical" reading of the ALJ's opinion establishes the ALJ fairly considered Brown's statements relating to his pain. *Jones*, 623 F.3d at 1160.

14

consider other evidence beyond the objective evidence and in any event sufficiently articulated the bases for the ALJ's adverse credibility determination.

The ALJ's credibility determinations are entitled to special deference. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) (citing *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.")). However, the ALJ is nonetheless required to "build an accurate and logical bridge between the evidence and the result." *Id.* (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). "'In analyzing an ALJ's opinion for such fatal gaps or contradictions, we give the opinion a commonsensical reading rather than nitpicking at it.'" *Id.* Therefore, we will overturn the ALJ's credibility determination only when it is so lacking in explanation or support that it is "patently wrong." *Id.*; *Elder v. Astrue*, 529 F.3d 408, 413-414 (7th Cir. 2008)).

When assessing the credibility of a claimant's statements, the kinds of evidence the Court is directed to consider, in addition to the objective medical evidence, include: (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any other measures the individual uses to relieve pain or other symptoms; (7) Any other factors concerning the individual's functional limitations and restrictions

due to pain or other symptoms. SSR 96-7p. "The ALJ need not mechanically recite findings on each factor, but must give specific reasons for the weight given to the individual's statements." *Copeland*, 2011 WL 831133, at *11 (citing *Ware v. Apfel*, No. IP-99-1526-C H/G, 2000 WL 1707942 (S.D. Ind. Nov. 14, 2000)).

Here, the record shows that the ALJ properly considered both objective medical evidence as well as non-objective evidence in making his credibility determination. The ALJ's decision specifically references objective evidence, including MRIs, x-rays, and evaluation and treatment reports. Regarding other kinds of evidence to be considered under SSR 96-7p, the ALJ's decision specifically referenced Brown's daily activities as well as his lack of any side effects from his medications. Though the ALJ is relieved of the obligation to tediously and mechanically enter specific findings on each and every factor, the record before us reveals that the ALJ properly considered virtually all of the required factors, despite his having referenced only two of those factors in his written decision.

Brown contends that the ALJ erred by not specifically mentioning his use of a spinal cord stimulator and a wrist brace. However, as previously noted, an ALJ "need not provide a written evaluation of every piece of evidence," but "need only 'minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.'" *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (quoting *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)). Because the ALJ provided the specific reasons referenced above as required by SSR 96-7p, his failure to specifically address

16

certain other items does not undermine his overall credibility determination.

Lastly, Brown complains that the Appeals Council wrongfully considered only objective medical evidence in making its credibility decision by adopting the medical expert's testimony for residual functional capacity, in violation of 20 C.F.R. § 404.1529 (The ALJ must consider "all of [the claimant's] symptoms" and determine "the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence."). In support of this argument, Brown faults the medical expert's testimony as relying only on objective evidence in making her assessment. R. at 316. This argument lacks any merit. The adoption of a medical expert's opinion with regard to objective medical evidence is one of many permissible factors available to inform the ALJ's credibility determination. As noted previously, the ALJ properly considered various other non-objective factors in forming that credibility determination, and it was properly adopted thereafter by the Appeal's Council. Having considered both non-objective and objective evidence as required and having articulated the reasons for his credibility determination, we find that the ALJ's credibility determination is neither patently wrong nor lacking a substantial evidentiary basis, and thus is not subject to reversal or remand by the Court.

## **Conclusion**

For the reasons explicated above, we conclude that substantial evidence supports the challenged findings of the Commissioner, and therefore the Commissioner's decision is AFFIRMED with final judgment entered accordingly.

IT IS SO ORDERED.

Date: ___07/08/2011___

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

J. Frank Hanley II
laurasiener@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov